DECISION AND JUDGMENT ENTRY
{¶ 1} Rosilinda Massie (Mother) appeals the Scioto County Juvenile Court's award of permanent custody of six of her children to Scioto County Children Services (SCCS), and permanent custody of her seventh child to the child's father. Mother contends the trial court erred in granting permanent custody because she has complied with the conditions of her case plan and never received an opportunity to re-unify with her children. In essence, she argues the court's findings that the children cannot be placed with her within a reasonable period of time and that an award of permanent custody in the children's best interest are against the manifest weight of the evidence. We conclude that the juvenile court's award of permanent custody is supported by *Page 2 
competent, credible evidence. First, it is undisputed that the children have been in the temporary custody of the agency for at least 12 months of a consecutive 22 month period. Moreover, the court's finding regarding the inability of placing the children with her is based upon testimony that Mother's retardation prevents her from having adequate parenting skills, including the inability to manage the children even within a controlled environment. Despite the efforts of the agency and other professionals, she has shown no improvement since the children's removal four years prior to the award of permanent custody. More importantly, the prognosis is she will not be able to improve her parenting skills in the future. Finally, this evidence also supports the best interest determination. Accordingly, we affirm.
 I. Procedural History {¶ 2} SCCS filed its complaint in May, 2002, seeking temporary custody of Mother's six minor children, Jerry Buck, Thomas Buck, Ayla Buck, Donavan Massie, Heather Massie, and Oliver Massie. The parties agreed to a finding of dependency on all six children and also agreed that temporary custody should vest in SCCS. Subsequently, SCCS filed a motion for permanent custody of the children in October, 2003. This motion also included Mother's seventh child, Alison Massie. The court denied the motion in November of 2004, and ordered the local board of the Ohio Department of Mental Retardation and Developmental Disabilities (MR/DD) to provide services to Mother.
 {¶ 3} Exactly one year later, SCCS filed a second motion for permanent custody on November 30, 2005. After a two-day hearing, the court granted the *Page 3 
motion and awarded permanent custody of six of Mother's children to SCCS. The court also awarded permanent custody of Mother's seventh child, Alison Massie, to her father, James Craig.
 II. Assignment of Error {¶ 4} On appeal, Mother asserts the following assignment of error:
 THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY OF THE MINOR CHILDREN, JERRY BUCK, THOMAS BUCK, AYLA BUCK, DONOVAN BUCK, HEATHER MASSIE, AND OLIVER MASSIE TO THE SCIOTO COUNTY CHILDREN SERVICES BOARD, AND FURTHER ERRED WHEN IT GRANTED LEGAL CUSTODY OF THE MINOR CHILD, ALISON MASSIE TO JAMES CRAIG.
 A. Burden of Proof {¶ 5} Mother contends the trial court's decision to grant permanent custody of her six oldest children to SCCS, and of her youngest child to the child's father, James Craig, is against the manifest weight of the evidence.
 {¶ 6} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23. *Page 4 
 B. Standard of Review {¶ 7} Even under the clear and convincing standard, our review is deferential. If the trial court's judgment is supported by some competent, credible evidence going to all the essential elements of the case, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. In re Myers III, Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. In re Ohler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 III. Requirements for Permanent Custody Awards {¶ 8} Under R.C. 2151.414(B)(1) a juvenile court cannot make an award of permanent custody unless it finds by clear and convincing evidence that any one of the following conditions exist:
 (a) the child cannot be placed with either parent within a reasonable time or should not be placed with the parents
 (b) the child is abandoned
 (c) the child is orphaned and there are no relatives who are able to take custody
 (d) the child has been in the temporary custody of one or more agencies for at least 12 months of a consecutive 22 month period
The court must also find by clear and convincing evidence that the grant of permanent custody is in the best interest of the child. Id. *Page 5 
 {¶ 9} Here the juvenile court found all the children had been abandoned by their fathers, except for Allison. There was no finding of abandonment against the mother. However, the court found both that the children had been in the temporary custody of the agency for more than four years and that they cannot and should not be placed with the mother within a reasonable time. The court rejected parental placement within a reasonable time because of Mother's lack of parenting skills, her lack of progress despite the agency's best efforts and the prognosis that she did not have the ability to improve in the future. Ultimately, the court found the best interest of the children required permanent custody with the agency, except for Allison, who was placed in the custody of her father.
 A. Expert Witness {¶ 10} Before we look to the R.C. 2151.414 factors individually, we address Mother's argument that the court improperly qualified Dr. Robin Rippeth as an expert. Dr. Rippeth testified on behalf of the agency and without her testimony much of the necessary support for the motion would be missing.
 {¶ 11} Mother argues that Dr. Rippeth was not qualified to make the findings in her 2002 report, which she discussed at the 2006 hearing, because she had not obtained her license in psychology at the time. She did not support this argument with any authority other than a generic reference to Evid.R. 702, nor did she assign it as a separate error. Mother concedes that Dr. Rippeth has completed her doctoral training and is now a licensed psychologist. *Page 6 
 {¶ 12} At the 2006 permanent custody hearing, Dr. Rippeth testified that when she made the 2002 findings, she was a licensed professional clinical counselor (LPCC) and doctoral trainee qualified to conduct this type of examination and make the findings found in her report. Furthermore, she testified that she reviewed the report after completing her doctorate in 2004 and concluded that no changes were needed. Dr. Rippeth also testified that the information in the report is still accurate.
 {¶ 13} Evid.R. 702(B) provides that a witness may attain the status of an expert if she possesses specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony. It does not require an individual to have a college degree in order to be qualified as an expert witness. See State v. Mack (1995),73 Ohio St.3d 502, 511, 653 N.E.2d 329. Rather, professional training and experience in a particular field may be sufficient to qualify an individual as an expert. Mack, citing State v. Beuke (1988), 38 Ohio St.3d 29, 43,526 N.E.2d 274. See also, Newman v. Farmacy Natural Specialty Foods, 168 Ohio App.3d 630, 2006-Ohio-4633, ¶ 13-15. Moreover, an expert witness need not be the best witness on the subject matter as long as the expert aids the trier of fact in the search for the truth. State v.Hartman (2001), 93 Ohio St.3d 274, 287, 754 N.E.2d 1150, quotingState v. Tomlin (1992), 63 Ohio St.3d 724, 728, 590 N.E.2d 1253. The determination of whether a witness qualifies as an expert is left to the discretion of the trial court. State v. Yates (1994), 71 Ohio St.3d 219,221, 643 N.E.2d 105. *Page 7 
 {¶ 14} We conclude that despite the fact she had not yet completed her doctorate in 2002, the trial court did not abuse its discretion in qualifying Dr. Rippeth as an expert. Dr. Rippeth's position as a doctoral trainee and LPCC provided her with specialized knowledge, training and skills for the purposes of conducting a psychological examination of Mother and making the findings found in her 2002 report. And her 2004 review of the report, which occurred after completing her doctorate, adopts and reaffirms her prior finding. Because the court properly exercised its discretion in qualifying Dr. Rippeth, it was entitled to rely upon her opinions in reaching its decision.
 B. Parental Placement within a Reasonable Time — R.C. 2151.414(B)(1)(a) {¶ 15} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C.2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E)1-15, the court shall determine the children cannot or should not be placed with the parent.[2] *Page 8 
 {¶ 16} Here the record reveals SCCS has been involved with Mother and her children since 1992, having received thirty referrals before removal of her children. The children were finally removed from Mother's home on May 3, 2002, because of deplorable living conditions. After the court issued a temporary order, the parties agreed to a finding of dependency because the children lacked adequate parental care due to the mental or physical condition of their parents.
 {¶ 17} Mother has an IQ of 57 and is mildly mentally retarded. SCCS has provided her with in-home parenting since 1996, along with parenting help from Shawnee Mental Health Center and caseworker Karen Kinker. Mother has also received services from MR/DD since January, 2005, and has received a psychological evaluation.
 {¶ 18} At the 2006 hearing on permanent custody, Ms. Kinker testified that there have been no changes in Mother's parenting skills in the more than four years since the children's removal. She testified that Mother has attended all the services requested of her, but seems unable to assimilate her lessons or to transfer what she is taught to real life situations. Ms. Kinker also testified the MR/DD efforts have not improved Mother's parenting skills, in spite of having exhausted all available services.
 {¶ 19} Becky Mault, service program administrator at MR/DD, testified that her agency found Mother to be mildly mentally retarded. She testified that *Page 9 
MR/DD offered Mother services mainly to improve her socialization and educational skills. Ms. Mault testified that the services were offered to Mother 5 days a week, but her attendance varied from once a week to as often as 3-4 days a week. She further testified that Mother has shown no progress in any of the areas where MR/DD has been working with her.
 {¶ 20} Dr. Robin Rippeth, a licensed psychologist, testified that she has known Mother since 2002, and has witnessed many of Mother's visits with her children at SCCS. During these visits, Dr. Rippeth testified that even under the controlled conditions at SCCS, Mother could not manage the children. The visits seemed very chaotic and the younger children would sometimes wander out of the room without Mother realizing it.
 {¶ 21} Dr. Rippeth further testified that Mother experiences significant cognitive and functional limitations that impede her ability to provide effective parenting. For example, Mother is incapable of applying consistent consequences and limits with her children. Dr. Rippeth does not believe that Mother's abilities could be enhanced with any further training. Dr. Rippeth also testified that in the more than four years that she has been involved with Mother, she has seen no change in Mother's abilities or the way she relates to her children.
 {¶ 22} Edward Cook, the father of the two oldest children, Jerry and Thomas Buck, has done nothing to attempt to reunify with his sons. Ms. Kinker testified that Cook told her he did not want to know anything about the children. *Page 10 
 {¶ 23} Steven Massie, the father of Ayla Buck and Donovan and Heather Massie, indicated to the court that he wanted permanent custody of his children to be vested with SCCS.
 {¶ 24} James Craig, the father of Alison Massie, has visited Alison on a regular basis since she was six months old. He has maintained employment with Mills Pride and lives with Ray and Barbara Vandiver. Alison visits Mr. Craig on the weekends under the supervision of the Vandiver's at their residence. Mr. Craig has consistently paid child support and has completed all the requirements of his case plan. Furthermore, the trial court found that the home Mr. Craig shares with the Vandivers is a suitable place for a child to live.
 {¶ 25} This evidence provides ample support for the court's findings concerning placement with each of the respective parents. Thus, its finding that the children cannot or should not be placed with the mother is not against the manifest weight of the evidence.
 C. Abandonment — R.C. 2151.414(B)(1)(b) {¶ 26} The evidence just cited above also provides ample support for the finding of abandonment against Edward Cook and Steven Massie.
D. Temporary Custody for at least 12 out of a consecutive 24 month period — R.C. 2151.414(B)(1)(d)
 {¶ 27} The fact that the children had been in the agency's temporary custody for four years is undisputable from the record. Thus, not only does the evidence support the finding that the children cannot or should not be placed with the mother, but it also satisfies the "12 out of 24" rule. Either of the findings *Page 11 
alone would be sufficient if the agency also satisfies the best interest requirement.
 E. The Best Interest of the Children {¶ 28} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.
 {¶ 29} In its decision, the trial court did not address the children's wishes, the children's need for a permanent placement, and whether that type of placement could be achieved without a grant of permanent custody to the agency. However, since the mother does address these omissions, they are not fatal. See In re Butcher (Apr. 10, 1991) Athens App. No. 1470, unreported. It did address the custodial history and found the children had been in the temporary custody for at least 12 months out of a consecutive 22 month period. It also found the temporary placement had lasted for over four years. Mother does not contest either of these findings and the record clearly supports them. While not expressly characterizing it as such, the court also clearly considered the interaction of the children with their mother. As can be seen from the previous sections, this factor formed the essence of the court's concerns for the children. The court's conclusion that the mother cannot meet the needs of the children *Page 12 
now or in the future is self-evident upon review of the record and our previous discussion. In sum, the same facts that support the finding that the children cannot or should not be placed with the mother within a reasonable period of time also support a finding that its in their best interest to award permanent custody to the agency, or in the case of Allison, her father.
 IV. Conclusion {¶ 30} While the court need only make one of the first four findings required by R.C. 2151.414(B)(1), here it made two, both of which are supported by the record. And the court's determination that an award of permanent custody is in the children's best interest is also clearly justified by the facts. Accordingly, we reject Mother's assignment of error.
[2] R.C. 2151.414(E)(1) states:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
R.C. 2151.414(E)(2) states:
 Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code.
JUDGMENT AFFIRMED. *Page 13 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion. *Page 1