DECISION AND JUDGMENT ENTRY
{¶ 1} James Triplett, the maternal grandfather of A.V. and I.V., appeals the trial court's decision awarding permanent custody of the children to the Lawrence County Department of Job Family Services ("LCDJFS") and argues that the trial court erred in not awarding custody to him. He contends that the trial court never made a proper determination concerning whether he would be an appropriate relative for temporary custody of the children. And subsequently the trial court abused its discretion when it denied him custody and instead awarded permanent custody to LCDJFS. He argues that the trial court improperly considered his failure to develop a relationship with the children during the time in which LCDJFS had temporary custody. Because there was no timely appeal after the trial court found the children dependant and placed them in the temporary custody of LCDJFS, we lack jurisdiction to consider whether the trial court's temporary custody award was erroneous. Nonetheless, even if we assume without deciding that the *Page 2 
court should not have considered any evidence concerning Mr. Triplett's lack of bonding with the children during this time, other facts, including his minimal contact with the children after the temporary placement, justify the award of permanent custody to LCDJFS. Accordingly, we affirm the trial court's judgment.
 I. Procedural History {¶ 2} In June 2007, LCDJFS filed a complaint in the Lawrence County Juvenile Court alleging that A.V. and I.V. (the "children") were dependant and neglected. The court granted an ex parte placement of the children with LCDJFS and held a shelter hearing, during which the court extended the temporary custody order and established a date for an adjudication hearing. The matter proceeded to a hearing before a magistrate, where the mother of the children, Amanda Triplett, appeared and requested counsel. So the magistrate rescheduled the matter. During the hearing, however, the magistrate asked a caseworker from LCDJFS whether there were any family members who were willing and able, if approved, to take care of the children. The caseworker responded that the maternal grandmother, Georgia Triplett, had expressed interest, but then explained the reasons why she had not been approved. He also stated that they had an appointment to do a home study with Mr. Triplett, but that it had not been conducted yet; so, they were "waiting to see what happens."
 {¶ 3} After several continuances, the matter ultimately proceeded to an adjudication hearing in November 2007, at which time both parents, Ms. Triplet and Mark Vaughn, the punitive father, appeared and with the assistance of counsel they entered a voluntary admission to the amended complaints alleging dependency. The court *Page 3 
accepted their admissions, found the children to be dependent, [1] and continued the temporary orders. In a judgment entry filed on November 27, 2007, the court then accepted the parties' agreed case plan and incorporated it as the dispositional order. Under the terms of the case plan, LCDJFS was awarded temporary custody of the children.
 {¶ 4} In April 2008, LCDJFS filed a motion for permanent custody of the children. Shortly thereafter, Patricia Sergent, the children's paternal grandmother, filed a petition for custody of A.V. and Mr. Triplett filed a petition for custody of both children. The court conducted an evidentiary hearing on these matters in July 2008. The guardian ad litem ("G.A.L.") filed an initial and final report. After Mr. Triplett responded, the trial court issued its decision on September 2, 2008 and awarded permanent custody to LCDJFS. Mr. Triplett now appeals and presents one assignment of error:
 THE TRIAL COURT MADE PREJUDICIAL ERROR AND ABUSED ITS DISCRETION WHEN IT FAILED TO PLACE [A.V. AND I.V.] WITH APPELLANT
 II. Jurisdiction to Consider Claimed Errors in Temporary Custody Award {¶ 5} Mr. Triplett contends that the trial court erred when it refused to grant him temporary custody of the children in light of its failure to issue a decision setting forth the reasons it determined that placement with a relative was not "appropriate" under R.C. 2151.28(B)(1).
 {¶ 6} R.C. 2151.28 states:
 (A) No later than seventy-two hours after the complaint is filed, the court shall fix a time for an adjudicatory hearing. The court shall conduct the adjudicatory hearing within one of the following periods of time: *Page 4 
 * * *
 (2) If the complaint alleged that the child is an abused, neglected, or dependent child, the adjudicatory hearing shall be held no later than thirty days after the complaint is filed, except that, for good cause shown, the court may continue the adjudicatory hearing for either of the following periods of time:
 * * *
 (B) At an adjudicatory hearing held pursuant to division (A)(2) of this section, the court, in addition to determining whether the child is an abused, neglected, or dependent child, shall determine whether the child should remain or be placed in shelter care until the dispositional hearing. When the court makes the shelter care determination, all of the following apply:
 (1)The court shall determine whether there are any relatives of the child who are willing to be temporary custodians of the child. If any relative is willing to be a temporary custodian, the child otherwise would remain or be placed in shelter care, and the appointment is appropriate, the court shall appoint the relative as temporary custodian of the child, unless the court appoints another relative as custodian. If it determines that the appointment of a relative as custodian would not be appropriate, it shall issue a written opinion setting forth the reasons for its determination and give a copy of the opinion to all parties and the guardian ad litem of the child.
 The court's consideration of a relative for appointment as a temporary custodian does not make that relative a party to the proceedings.
 {¶ 7} Thus, R.C. 2151.28(B)(1) requires a trial court to determine whether there are any "appropriate" relatives of an abused, neglected, or dependent child who are willing to be temporary custodians until the time of the dispositional hearing. Moreover, if there is a willing relative, the child would otherwise remain in shelter care, and the appointment is appropriate, the court is required to appoint a relative. R.C. 2151.28(B)(1). However, if the court determines that placement with a relative would not be appropriate, the court must issue a written opinion setting forth the reasons for its determination. Id. *Page 5 
 {¶ 8} At the adjudicatory hearing on November 20, 2007, the court found the children to be dependent and continued the temporary custody orders. It indicated that it would conduct a dispositional hearing within 10 days, unless the parties presented it with an agreed entry with an attached proposed reunification plan. In a judgment entry filed on November 27, 2007, the court accepted the parties' agreed case plan and incorporated it as the dispositional order. Under the case plan, LCDJFS was awarded temporary custody of the children.
 {¶ 9} The record indicates that at the adjudicatory hearing the trial court did not determine whether there were any relatives who were willing to be temporary custodians of the children, as required under R.C. 2151.28(B)(1). Although LCDJFS had previously advised the magistrate at the June 8, 2007 hearing that Mr. Triplett had expressed interest in obtaining custody of the children and that LCDJFS was going to conduct a "home study," the court never determined whether the appointment of Mr. Triplett as temporary custodian was appropriate. Furthermore, the trial court failed to issue a written opinion explaining its reasons for its implicit determination that Mr. Triplett would not be appropriate. However, we conclude that we lack jurisdiction to consider whether the trial court's failure to comply with R.C. 2151.28(B)(1) requires reversal.
 {¶ 10} The Supreme Court of Ohio has held that:
 An adjudication by a juvenile court that a child is `neglected' or `dependent' as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a `final order' within the meaning of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02. *Page 6 
In re Murray (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, syllabus. Moreover, the Supreme Court of Ohio recently held that "an appeal of an adjudication order of abuse, dependency, or neglect of a child and the award of temporary custody to a children services agency pursuant to R.C. 2151.353(A)(2) must be filed within 30 days from the judgment entry pursuant to App. R. 4." In re H.F., Slip Opinion, 2008-Ohio-6810, ¶ 18.
 {¶ 11} Here, the trial court filed a judgment entry that found the children dependant and placed the children in the temporary custody of LCDJFS on November 27, 2007. Under In re Murray and R.C. 2505.02, the court's entry was a final order that had to be appealed within 30 days. See In re H.F. However, no one appealed then. Mr. Triplett, who was not a party at that stage, initially lacked standing to appeal. While he had expressed interest in obtaining temporary custody of the children, consideration of Mr. Triplett as a temporary custodian under R.C. 2151.28 did not make him a party to the proceeding. See R.C. 2151.28(B)(1). Moreover, Mr. Triplett never filed a motion to intervene. And, neither parent filed an appeal. So, the court's decision on the temporary custody award became the law of the case. And in the absence of a timely appeal, we lack jurisdiction to consider Mr. Triplett's argument that the trial court erred in refusing to grant him temporary custody under R.C. 2151.28(B)(1).
 III. Permanent Custody Awards {¶ 12} Mr. Triplett also contends that the trial court abused its discretion when it granted permanent custody to LCDJFS and denied him legal custody of the children in violation of the best interest standard. He argues that had the court followed the statute when awarding temporary custody of the children, some of the factors upon which the trial court based its permanent custody would not have been present. Specifically, he *Page 7 
argues that the trial court should not have found fault in his failure to develop a relationship with the children during the time in which LCDJFS had temporary custody. Had the court properly awarded him temporary custody, he argues he would have bonded with them. However, we have already determined that any errors concerning the trial court's temporary custody award are not properly before us. Nonetheless, even if we assume without deciding that the court erred in considering evidence concerning his lack of bonding with the children during the time in which LCDJFS had temporary custody, we conclude that other competent, credible evidence supports the court's permanent custody award to LCDJFS.
 A. Burden of Proof {¶ 13} An award of permanent custody must be based upon clear and convincing evidence. The Supreme Court of Ohio has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986),25 Ohio St.3d 101, 103-104, 495 N.E.2d 23. In reviewing whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. *Page 8 
 B. Standard of Review {¶ 14} Even under the clear and convincing standard, our review is deferential. State v. Buck, Scioto App. No. 06CA3123, 2007-Ohio-1491, ¶ 7. An appellate court will not reverse a trial court's permanent custody decision if some competent and credible evidence supports the judgment. In re K.J., Athens App. No. 08CA14, 2008-Ohio-5227, ¶ 10, citing In re Perry, Vinton App. Nos. 06CA648 and 06CA649,2006-Ohio-6128, at ¶ 40; see, also, Schiebel at 74. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. In re Ohler, Hocking App. No. 04CA8,2005-Ohio-1583, ¶ 15, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (noting that "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.") Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." In re K.J. at ¶ 10, citing Davis v. Flickinger (1997),77 Ohio St.3d 415, 419, 674 N.E.2d 1159.
 C. Requirements for Permanent Custody Awards {¶ 15} Under R.C. 2151.414(B)(1), a juvenile court cannot make an award of permanent custody of a child to a children services agency unless it finds by clear and convincing evidence that any one of the following conditions apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child *Page 9 
cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 16} The court must also find by clear and convincing evidence that the grant of permanent custody is in the best interest of the child. Id. R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply. Thus, before a trial court may award a children services agency permanent custody, it must find: (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies; and (2) that awarding the children services agency permanent custody would further the child's best interests.In re K.J. at ¶ 16.
 {¶ 17} We have previously held that "a juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request."Keaton at ¶ 61, citing In re Dyal, Hocking App. No. 01CA11, 2001-Ohio-2383. Relatives seeking the placement of the child are not afforded the same presumptive rights that a natural parent receives as a matter of law, and the willingness of *Page 10 
a relative to care for the child does not alter the statutory factors to be considered in granting permanent custody. Id., citing Dyal. Rather, a juvenile court is vested with discretion to determine what placement option is in the child's best interest. Id. The child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. In re Adoption of Ridenour
(1991), 61 Ohio St.3d 319, 324, 574 N.E.2d 1055. Therefore, courts are not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. Keaton at ¶ 61, citing Dyal.
 {¶ 18} In its decision, the trial court found that the children cannot and should not be placed with the parents within a reasonable period of time. See R.C. 2151.414(B)(1)(a). The court also found that Mr. Vaughn abandoned the children. See R.C. 2151.414(B)(1)(b). Because Mr. Triplett does not dispute these findings, we do not address them.
 {¶ 19} The court also found that permanent commitment is in the best interest of the children and is supported by clear and convincing evidence. It stated that in determining the best interest of the children it had considered the factors set forth in R.C. 2151.414(D). It found that the children's need for a legally secured permanent placement was required due to the parents having failed to make any progress with the reunification plan. The court also found that the children's development within the foster care system has been positive and that the children are likely to be adopted by a family able to provide "a stable, positive and nurturing environment meeting the children's needs and best interest." *Page 11 
 {¶ 20} The court went on to state that it had given Mr. Triplett's custody motion "significant consideration." It found that the only significant argument Mr. Triplett raised was that he "is a blood relative who verbally expresses love for the grandchildren and a desire for them to be placed with him." The court found that there was no evidence of "an actual physical bond and relationship" between Mr. Triplett and the children.
 {¶ 21} The court then addressed Mr. Triplett's argument that his relationship with the children was "impacted" during the pendency of the case because the agency did not place the children with him. The court noted Mr. Triplett did not file a request for custody until April 21, 2008, nearly 14 days after the agency had filed their motion for permanent custody and 10 ½ months after the initiation of the case. The court also noted that while Mr. Triplett had expressed to the agency a desire for the children to be placed with him, the agency decided against that due to his prior criminal record, which included issues of alcohol abuse and domestic violence. Moreover, the court found that Mr. Triplett had made "no significant efforts" to communicate or to provide for the children, either during the pendency of the case or prior to the agency's involvement and that he did not maintain "close contact" with the agency or the children until the agency filed its permanent custody motion. The court noted that while it does appear that Mr. Triplett wishes to have opportunity to develop a relationship with the children, "this desire which has not been evidenced by significant effort comes at a date which is too late for the Court to justify delay in meeting the children's opportunity and need to experience a positive, stable and nurturing environment."
 {¶ 22} Finally, the court found that Mr. Triplett's suggestion that he could not afford legal counsel did not justify his failure to appear before the court on his own *Page 12 
behalf; the court also noted that Mr. Triplett testified that "during the period in which he was unable financially to exercise legal action he expended approximately $4,000.00 on house improvements with no encouragements or promises from Children Services."
 {¶ 23} Based on our review of the evidence we find that there is competent, credible evidence to support the trial court's permanent custody award and that, even if we totally discount the "lack of bonding" due to improper temporary placement, other facts justify the award.
 {¶ 24} At the July 2008 hearing on permanent custody, Randy Thompson, a caseworker with LCDJFS, testified that LCDJFS has been involved with Ms. Triplett and the children since receiving a referral in May 2007. He testified that at that time LCDJFS entered into a safety plan with the maternal grandmother, Georgia Triplett, and placed the children with her until the investigation was complete. According to Thompson, however, Georgia Triplett violated the agreement and returned the children to Ms. Triplett. The children were finally removed from Ms. Triplett's home on June 5, 2007, due to an incident involving issues of lack of supervision and substance abuse. Thompson testified that both Georgia Triplett and Mr. Triplett expressed an interest in wanting the children, but that it was his understanding that they were residing together as husband and wife. He testified that he informed them that placement with them was unlikely because Georgia had violated the previous agreement.
 {¶ 25} Chrissy Waddle, a caseworker from LCDJFS, testified concerning the agency's initial decision not to place the children with Mr. Triplett in June 2007 and discussed several factors why she believed permanent custody was in the children's best interest. She testified that a "home study" on Mr. Triplett occurred on June 12, 2007 and *Page 13 
that it was "denied." She testified that Mr. Triplett had previously had custody of I.V. and A.V. when Ms. Triplett was in jail and that I.V., who was just a couple of months old at the time, had not received any medical care since birth, and that A.V. was behind on her shots. She testified that Mr. Triplett's failure to seek medical treatment or care for the children while they were in his care was a "red flag." She also testified that Mr. Triplett had a "substantial criminal history," including a disorderly conduct conviction in 2005 involving Georgia Triplett and a DUI conviction in 2007. She testified that Mr. Triplett did not have a driver's license and relied on Georgia, from whom he is separated, for transportation. Finally, she testified that during the pendency of the case, approximately 13 months, there had been no "regular contact" and that Mr. Triplett had not had visitation with the children because he never filed a motion requesting visitation. She testified that he dropped off gifts and birthday presents, but that they were normally left at the "front desk." She testified that while he did express interest in having the children placed with him in June 2007, he did not keep in "close contact" with LCDJFS while the case was pending.
 {¶ 26} Kristy Sly testified that she and her husband have been the foster parents of I.V and A.V. since June 2007. When she received the children, I.V. was four months old and A.V. was four years old. She testified that she took I.V. to the doctor immediately and that he spent two nights in the hospital because of breathing difficulties due to asthma. She testified that she also took him to an orthopedic surgeon because he had a "club foot" that had not previously received medical attention and that he has since had surgery on his foot. She testified that doctors informed her that the condition of his "club foot" had gone from moderate to severe because it was not cared for when he was a newborn. *Page 14 
She further testified that the children are now "doing great." She stated that they are "happy," "just great kids," and "just normal little boy and girl they are really good." She explained that she and her husband are interested in adopting the children. She testified that she is a stay-at-home mom, that her husband, a truck driver, is home four days a week, and that her mother helps her on a regular basis. She stated that Mr. Triplett has given the children some gifts and that she is not opposed to him visiting the children.
 {¶ 27} Mr. Triplett testified that he previously had custody of the children while Ms. Triplett was in jail. In describing his relationship with A.V., whom he had for two years while she was a baby, he stated that he loved her and would do anything for her. He testified that he knew I.V. had a club foot, but that he did not have him long enough to do anything about it; he explained that Georgia would "mess up" the doctor appointments. In discussing his arrest record, he stated that he has made some "stupid mistakes" and that he has since stopped drinking alcohol. He testified that he wanted an opportunity to take care of the children to the best of his ability. He admitted that he had had very little contact with LCDJFS from June 2007 until February 2008, suggesting that "it didn't do no good."
 {¶ 28} We conclude that the record contains ample evidence to support the trial court's finding that granting LCDJFS permanent custody, instead of granting Mr. Triplett legal custody, serves the children's best interest. In its decision, the court indicated that it considered the best interest factors set forth in R.C. 2151.414(D). The court addressed the children's need for a legally secure permanent placement and found that the parents failed to make any progress with the reunification plan. While not expressly characterizing it as such, the court also considered the interrelationship of the children *Page 15 
with others and found that the children's development within foster care has been "positive" and that the children are likely to be adopted into "a stable, positive and nurturing environment." It also considered the custodial history of the children. It set forth the history of LCDJFS's involvement and noted that LCDJFS did not place the children with Mr. Triplett due to his prior criminal record, which included issues of alcohol abuse and domestic violence. The court also found that Mr. Triplett had made "no significant efforts" to communicate or to provide for the children even prior to LCDJFS's involvement and that he did not file a request for custody until nearly 14 days after LCDJFS filed its motion for permanent custody. Notwithstanding any impropriety in the temporary placement, nothing prevented Mr. Triplett from taking action on his own to develop a more significant relationship with the children. His efforts were minimal at best in that regard until the agency filed for permanent custody.
 {¶ 29} We conclude that the court's determination that an award of permanent custody is in the children's best interest is supported by the record. Accordingly, we overrule Mr. Triplett's sole assignment of error.
 JUDGMENT AFFIRMED. *Page 16 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Probate-Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. McFarland, J.: Concur in Judgment and Opinion.
[1] In its judgment entry dated November 27, 2007, the court found the children to be neglected and dependant. However, because neither party raises this issue, we need not address it at this time. *Page 1