[Cite as *In re I.M.*, 2011-Ohio-560.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

IN THE MATTER OF:          :     CASE NO. 10CA35
                          :
I.M.                       :     **Released: January 28, 2011**
                          :     DECISION AND JUDGMENT
Adjudicated Dependant Child.  :     ENTRY
_____
APPEARANCES:

James A. Wallace, Athens, Ohio, for Appellant.

C. David Warren, Athens County Prosecuting Attorney, and George
Reitmeier, Athens County Assistant Prosecutor, Athens, Ohio, for Appellee.
_____

McFarland, J.:

{¶1}     Appellant Angel Kasler appeals the decision of the Athens
County Court of Common Pleas, Juvenile Division, awarding permanent
custody of her daughter, I.M. to Athens County Children Services.  Kasler
argues there was error below in that the trial court's decision was not
supported by clear and convincing evidence.  We disagree.  The record
below shows that I.M. could not or should not have been placed with Kasler
in a reasonable time.  Further, there was clear and convincing evidence to
support the trial court's finding that it was in I.M.'s best interest to award
permanent custody to Children Services.  Accordingly, we overrule Kasler's
assignment of error and affirm the trial court's decision.

I. Facts

**{¶2}**     Appellant Angel Kasler and Mark McClelland are the

biological parents of I.M. [1]  I.M. was born on October 21, 2009, and was

approximately six months old at the time of the trial court's decision.  On

October 23, Athens County Children Services obtained emergency custody

of I.M. and filed a complaint requesting an initial disposition of permanent

custody.

**{¶3}**     The trial court held adjudication hearings on the matter in

November and December of 2009.  At those hearings, the court heard

evidence that Kasler had mental illness issues, and that Kasler and

McClelland both had substance-abuse issues.  Further, two months before

I.M. was born, drugs and drug paraphernalia were found in Kasler and

McClelland's home and the home itself was in a filthy condition.  Further,

both parents were under indictment for felony drug offenses at the time of

the hearings.  In January of 2010, the trial court found I.M. to be a dependent

child.

**{¶4}**     After the finding of dependency,  the trial court held

disposition hearings on the issue of permanent custody in February of 2010.

At the conclusion of those hearings, the trial court took the matter under

---

[1] Mark McClelland has appealed this permanent custody decision separately.

advisement. On June 9, 2010, the trial court granted permanent custody of I.M. to Athens County Children Services and terminated the parental rights of both Angel Kasler and Mark McClelland. Following that decision, Kasler timely filed the current appeal.

## II. Assignment of Error

THE TRIAL COURT'S DETERMINATION THAT GRANTING PERMANENT CUSTODY OF I.M. TO ATHENS COUNTY CHILDREN SERVICES IS IN HER BEST INTEREST WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

## III. Legal Analysis

{¶5} An appellate court will not overrule a trial court's decision regarding permanent custody if there is competent and credible evidence to support the judgment. *In re McCain*, 4th Dist. No. 06CA654, 2007-Ohio-1429, at ¶8. "If the trial court's judgment is supported by some competent, credible evidence going to all the essential elements of the case, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court." *In re Buck*, 4th Dist. No. 06CA3123, 2007-Ohio-1491, at ¶7. Therefore, an appellate court's review of a decision to award permanent custody is deferential. *McCain* at ¶8.

{¶6} "An agency seeking permanent custody bears the burden of proving its case by clear and convincing evidence." *In re Perry*, 4th Dist. Nos. 06CA648, 06CA649, 2006-Ohio-6128, at ¶39. Clear and convincing

evidence has been defined as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *McCain* at ¶9, citing *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23.

{¶7}    In her sole assignment of error, Angel Kasler argues that awarding permanent custody of I.M. to Children Services was not in I.M.'s best interest and the decision was not supported by clear and convincing evidence. Accordingly, we first state the appropriate test a trial court must apply in ruling on a motion for permanent custody.

{¶8}    Under R.C. 2151.414, an agency seeking permanent custody must meet a two-part test before parental rights may be terminated and permanent custody awarded. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶31. Under the first part of the test, one or more of conditions listed in R.C. 2151.414(B)(1)(a) through (d) must apply. R.C. 2151.414(B)(1)(a) states:

{¶9}    "The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or

private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."

{¶10}    In determining whether a child cannot or should not be placed with the parents in a reasonable time, the trial court must refer to 2151.414(E).  Under that section, "If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]"  The section then lists 16 factors, including the following three: (E)(2) - "Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing;" (E)(11) - "The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health,

welfare, and safety of the child;" and (E)(16) - "Any other factor the court considers relevant."  R.C. 2151.414(E).

{¶11}   In the case sub judice, the trial court found that each of the three subsections listed above applied to Kasler.  Under (E)(2), the court found that a combination of Kasler's mental and emotional issues, together with her issues of substance abuse, were so severe that she would be unable to provide an adequate permanent home for I.M. within a year's time.  At the time of the disposition hearing, Kasler was suffering from clinical depression and panic disorder and taking medication for both.  She was also taking Subutex, which her doctor had prescribed to help curb her craving for heroin.

{¶12}   Under R.C. 2151.414(E)(11), the trial court noted that Kasler's parental rights had been terminated in a recent prior case.  Athens County Children Services had been granted permanent custody over three other children of Kasler within days of the birth of I.M.  And the court determined that Kasler had failed to prove that she could provide a legally secure, safe and healthy placement for I.M. as well.

{¶13}   Finally, under R.C. 2151.414(E)(16), the court noted that subsequent to the filing of the motion for permanent custody, Kasler had refused, on at least one occasion, to take a drug screen.  Further, the court

noted that Kasler had failed to sign medical releases, which made it impossible for the court "to verify any claims of rehabilitation and give any serious consideration to moving in a different direction with this child."

**{¶14}** As such, we agree with the trial court that there were at least three bases for determining that I.M. should not or could not be placed with Kasler in a reasonable time, any one of which would have been adequate to satisfy the first prong of the two-part permanent custody test. Accordingly, we turn to the second part of the test, whether permanent custody is in the best interest of the child.

**{¶15}** An agency seeking permanent custody must demonstrate by clear and convincing evidence that such action is in the best interest of the child. R.C. 2151.414(D)(1) sets forth the factors a court must consider in the best interest analysis:

**{¶16}** "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

**{¶17}** (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶18}   (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶19}   (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶20}   (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶21}   Divisions (E)(7) to (11) include:  (7) whether the parent has been convicted of a number of listed offenses; (8) whether the parent has repeatedly withheld medical treatment or food; (9) whether the parent has placed the child at substantial risk of harm two or more times due to substance abuse and has rejected treatment two or more times or refused to

participate in treatment; (10) whether the parent has abandoned the child; (11) whether the parent has had parental rights previously terminated.

{¶22}   The trial court addressed each of the relevant factors of the best interest analysis.  These factors included that at the time of the court's decision, I.M. was six months old.  She had spent her entire life in foster care, having been placed with Children Services under an emergency order immediately after her birth.  The court noted that Kasler's supervised visitations with I.M. went well, and that Kasler expressed obvious affection towards her.  Also, Kasler only rarely missed visitation appointments, even though Children Services did not help her with transportation.  However, for the following reasons, the court determined that I.M.'s need for a legally secure placement could not be achieved without granting permanent custody to Children Services.

{¶23}   The trial court noted that Kasler suffers continuing problems with both mental illness and substance abuse.  Kasler testified that she was taking Prozac and Klonapin for depression and an anxiety disorder.  Additionally, Kasler admitted to a history of heroin abuse.  The fact that her battle with substance abuse was not over was underscored by the fact that, at the time of the disposition hearing, she was still taking Subutex (under her doctor's supervision) in order to help her deal with her heroin addiction.

{¶24}   The court found that Kasler's history regarding her prior children was very troubling.  As already noted, she had recently had her parental rights terminated over three of her other children due to inadequate parenting, partly related to her issues with drug abuse.  Seven years earlier, she had also given up custody of an older child of hers.  And that child was currently living with the father's parents.  Additionally, the evidence showed that Kasler was using heroin during her pregnancy with I.M.

{¶25}   The trial court acknowledged that Kasler had made some attempt to straighten out her life.  Kasler testified that she no longer had a drug problem and had not used heroin since April of 2009.  However, the court noted that in August of 2009, shortly before I.M.'s birth, during a surprise inspection at her home by the Adult Parole Authority, there was some evidence of "track marks" on her arm.  Syringes and other drug paraphernalia were also found at the residence and during that same visit, I.M.'s father, Mark McClelland, tested positive for opiates.  At that time, Kasler was seven months into her pregnancy with I.M.

{¶26}   The court also noted that though Kasler claimed to be free from illegal drugs, she refused to provide the necessary medical releases which would allow Children Services and the court to verify her claims.  Additionally, on at least one occasion, subsequent to I.M.'s birth, Kasler

refused to take a drug screen.  Also subsequent to I.M.'s birth, in full knowledge that Children Services was seeking permanent custody of I.M., Kasler was dropped from ordered services with a mental health and counseling agency due to her noncompliance.  Finally, the court noted that at the time the permanent custody complaint was filed, Kasler was under indictment for felony drug offenses.

{¶27}   We agree with the trial court's findings and decision.  Our review of the record below, including the transcripts of the permanent custody hearings, shows that each of the trial court's findings were fully supported therein. The trial court had clear and convincing evidence that awarding permanent custody to Children Services was in I.M.'s best interest and we overrule Angel Kasler's sole assignment of error.

{¶28}   As to Kasler's argument regarding the proper standard of review to be applied in permanent custody cases, we see no inconsistency in our current standard of review and no reason to modify it.  We reiterate that a trial court's decision must find that the movant met or did not meet its burden by clear and convincing evidence.  Consistent with other Ohio

Courts of Appeals, we then review the record to determine whether there

was competent and credible evidence to support the trial court's decision.[2]


**JUDGMENT AFFIRMED.**

---

[2] See, e.g., *In re N.E.*, 7th Dist. Nos. 10 BE 1, 10 BE 2, 2010-Ohio-6012, at ¶42; *In re J.L.C.*, 11th Dist. No. 2010-T-0085, 2010-Ohio-5936, at ¶38; *In re S.G.*, 10th Dist. No. 10AP-442, 2010-Ohio-5722, at ¶10; In re D.D.S., 5th Dist. No. 2010CA00187, 2010-Ohio-5800, at ¶16.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J. and Kline, J.: Concur in Judgment and Opinion.

For the Court,


BY:  _____
Matthew W. McFarland, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**